IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DUNKIN' DONUTS INCORPORATED,
a Delaware corporation, DUNKIN' DONUTS
USA, INC., a Michigan corporation,

    Plaintiffs/Counterdefendants,

vs.  Civ. No. 03-925 JP/RLP

SHARIF, INC., a New Mexico corporation,
RAHIM SHARIF and ANISA SHARIF,
husband and wife,

    Defendants/Counterclaimants.

MEMORANDUM OPINION AND ORDER

On August 7, 2003, the Plaintiffs/Counterdefendants (Plaintiffs) filed an Application for Preliminary Injunction (Doc. No. 2). The Application for Preliminary Injunction is now fully briefed. Having considered the relevant law and the briefs, the Court finds that a preliminary injunction should issue. The Court also finds that it is appropriate to enter an order to show cause why the preliminary injunction should not be made permanent. Finally, the Court finds that a hearing on the Application for Preliminary Injunction is unnecessary because there are no disputed material facts. *See Kerr-McGee Corp. v. Farley*, 88 F.Supp.2d 1219, 1233 (D.N.M. 2000). *See also McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1313 (11th Cir. 1998)(in franchise infringement case, a hearing on the motion for preliminary injunction was unnecessary because, despite alleged improper motive to terminate the franchise agreement, it was undisputed that the defendants violated the franchise agreement thereby providing sufficient cause to terminate the franchise agreement).

A.  Background

On February 1, 1986, Plaintiff Dunkin' Donuts Incorporated and Defendant/Counterclaimant Sharif, Inc. (Sharif, Inc.) entered into a written Franchise Agreement granting Sharif, Inc. the right to operate a Dunkin' Donuts shop in Albuquerque, New Mexico. Defendants/Counterclaimants Rahim Sharif and Anisa Sharif (Defendants Rahim Sharif and Anisa Sharif) personally guaranteed all of the obligations which Sharif, Inc. might incur under the Franchise Agreement.  On June 1,1990,  Plaintiff Dunkin' Donuts Incorporated and Sharif, Inc. entered into a written Branded Products Agreement granting Sharif, Inc. the right to supply Dunkin' Donuts branded products to approved retail locations.

On January 3, 2000, the Franchise Agreement expired by its own terms.   Thereafter, Sharif, Inc. continued to operate the Dunkin' Donuts shop under a month to month franchise agreement.  The Defendants/Counterclaimants (Defendants) subsequently defaulted by failing to pay monies owed to the Plaintiffs under the Franchise and Branded Products Agreements.  As a result of the Defendants' failure to make the required payments to Plaintiff Dunkin' Donuts Incorporated, Sharif, Inc. executed and delivered on October 11, 2001 a promissory note to Plaintiff Dunkin' Donuts Incorporated for the amount of money due under the Franchise and Branded Products Agreements. Defendants Rahim Sharif and Anisa Sharif personally guaranteed Sharif, Inc.'s promissory note.  The final payment of the promissory note was due on May 1, 2003.

The Franchise Agreement may have been renewed on March 29, 2002 for a period ending on January 3, 2010.[1]  Even if the Franchise Agreement was not renewed, the Defendants, nonetheless, continued to operate the franchise on at least a month-to-month basis.  The Defendants, however, continued to default under the Franchise and Branded Products Agreements by failing to make the required money payments.  They also failed to pay amounts due under the promissory note.  Consequently, on December 21, 2002, Plaintiff Dunkin' Donuts Incorporated informed the Defendants that it would terminate the Franchise Agreement on February 1, 2003.  Plaintiff Dunkin' Donuts Incorporated also informed the Defendants at that time that they had to comply with the post-termination obligations of the Franchise Agreement upon its termination.  Those post-termination obligations include the cessation of the use of Dunkin' Donut trademarks, proprietary marks, the Dunkin' Donut system, and Dunkin' Donuts operating manuals as well as compliance with the covenant against competition.

According to Mr. Zullig, the Defendants have failed to report the relevant sales and fees to Plaintiff Dunkin' Donuts Incorporated as required by the Franchise Agreement for the week ending April 5, 2003 and all subsequent weeks.  On July 8, 2003,  Plaintiff Dunkin' Donuts Incorporated notified the Defendants that the Franchise Agreement was terminated.  The Defendants have failed to abide by the post-termination obligations under the Franchise Agreement.  On August 7, 2003, the Plaintiffs filed this lawsuit alleging trademark infringement

---

[1] Gary Zullig, a collection case specialist with Plaintiff Dunkin' Donuts Incorporated, states in an affidavit that there was no subsequent Franchise Agreement and that the 1986 Franchise Agreement was not extended or renewed.  The Defendants, however, have provided a copy of the renewed Franchise Agreement, albeit without signatures.  Although the Defendants have provided documentation supporting their allegation that they paid the $5,000 renewal fee in April 2001, there is an April 23, 2002 letter from Allied Domecq Quick Service Restaurants indicating that the Defendants still owed Dunkin' Donuts the $5,000 renewal fee.

and unfair competition under the Lanham Act, breach of the Franchise Agreement, breach of the Branded Products Agreement, and breach of the promissory note. The Plaintiffs seek injunctive and monetary relief.

The Defendants do not deny that they owe the Plaintiffs money under the Franchise Agreement, Branded Products Agreement, and the promissory note. The Defendants also do not deny that the Franchise Agreement was terminated nor do the Defendants deny that they have failed to comply with the post-termination obligations of the Franchise Agreement. The Defendants, however, assert that Razzak Gauba agreed on June 25, 2003 to purchase the Defendants' Dunkin' Donuts franchise interest but the Plaintiffs failed to give the Defendants' application for transfer of the franchise interest good faith consideration as required under the Franchise Agreement. The Defendants, therefore, filed the following counterclaims in this lawsuit: breach of duty to mitigate damages, breach of duty of good faith and fair dealing, and bad faith breach of contract. The Defendants also seek injunctive relief and monetary damages.

The Defendants claim that to their knowledge Mr. Gauba still intends to purchase their franchise interest in Dunkin' Donuts. In support of this claim, the Defendants have presented a letter notarized on September 16, 2003 and signed by Mr. Gauba which indicates Mr. Gauba's continued interest in buying the franchise interest at that time. A Franchise Services Manager, Allen White, however, later spoke with Mr.Gauba on October 6, 2003 and learned that Mr. Gauba had not further pursued the purchase of the Defendants' franchise interest because of financial problems.

B.  Discussion

The Plaintiffs apply for a preliminary injunction which enjoins the Defendants from "(1) infringing the trademark 'Dunkin' Donuts' and other trademarks, (2) unfairly competing using Dunkin' Donuts' proprietary marks, System, and operating manuals, and (3) competing in any business which sell [sic] products of the type offered by Dunkin' Donuts Shops...." Application for Preliminary Injunction at 1.  To establish entitlement to a preliminary injunction, the moving party must show: "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) [that] the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) [that] the injunction, if issued, will not adversely affect the public interest." *Federal Lands Legal Consortium ex rel. Robart Estate v. United States*, 195 F.3d 1190, 1194 (10th Cir. 1999).

1.  Substantial Likelihood of Prevailing on the Merits

As stated above, the Defendants do not dispute that, despite the July 8, 2003 notice of termination of the Franchise Agreement, they are currently using the Plaintiffs' trademarks, proprietary marks, system, and operating manuals.  Moreover, Defendants do not dispute that they are not complying with the Franchise Agreement's post-termination noncompetition clause. The Defendants argue that their actions are justified because the Plaintiffs acted in bad faith by failing to consider in good faith the Defendants' application to transfer their Dunkin' Donuts franchise interest to Mr. Gauba and by misrepresenting facts regarding Mr. Gauba's intentions to purchase the Defendants' franchise interest.

The Franchise Agreement states that the franchisee cannot assign a franchise interest without Dunkin' Donuts' prior written consent.  ¶10(B) of Franchise Agreement.  The Franchise

5

Agreement requires that the franchisee satisfy all accrued money obligations owed to Dunkin' Donuts before a transfer of a franchise interest can be approved.  ¶10(B)(4) and ¶10(C)(2)(g) of Franchise Agreement.  The Defendants admit that they owed money to Dunkin' Donuts and that they were in default of the Franchise Agreement, the Branded Products Agreement, and the promissory note months prior to the June 25, 2003 letter signed by Defendant Rahim Sharif and Mr. Gauba indicating Mr. Gauba's desire to purchase the Defendants' franchise interest.  Moreover, Dunkin' Donuts never received a formal franchise interest purchase and sales agreement from the Defendants or Mr. Gauba.  In addition, Mr. Gauba subsequently indicated to Dunkin' Donuts that he no longer intends to purchase the Defendants' franchise interest because he is financially unable to do so.  Finally, even if Mr. Gauba was still interested in purchasing the Defendants' franchise interest, it is doubtful that he could do so since the Franchise Agreement is terminated.  These facts demonstrate that the Plaintiffs were not obligated under the Franchise Agreement to consider the Defendants' alleged agreement with Mr. Gauba to transfer their franchise interest to him.  Furthermore, a franchisee's remedy for wrongful termination of a franchise agreement is an action for money damages, not unauthorized use of its franchisor's trademarks.  *S & R Corp. v. Jiffy Lube Intern., Inc.*, 968 F.2d 371, 377 (3d Cir. 1992)(quoting *Burger King Corp. v. Hall*, 770 F.Supp. 633, 638 (S.D. Fla. 1991)).  Under these circumstances, the Plaintiffs have shown a substantial likelihood of prevailing on the merits.

    2.  Irreparable Harm

The Plaintiffs argue that the following interests will be irreparably harmed if injunctive relief is not granted:  Dunkin' Donuts' interest in avoiding confusion among the public if an unauthorized franchise continues to operate as if it were a legitimate franchise, the goodwill

associated with the Defendants' Dunkin' Donuts shop, Dunkin' Donuts' interest in attracting another franchisee to locate in the area of the Defendants' Dunkin' Donuts shop, Dunkin' Donuts' interest in maintaining its system, and Dunkin' Donuts' interest in having the commitment of all of its franchisees not compete with other franchisees in the system. *See, e.g., ATL International, Inc. v. Baradar*, Business Franchise Guide (CCH), New Developments 30,324 (D.Md. 1997)(franchisor suffers irreparable injury if the franchisee is permitted to violate post-termination covenant not to compete); *Haagen-Dazs Shoppe Co., Inc. v. Morton*, Business Franchise Guide (CCH), New Developments 26,316 (D. Colo. 1994)(franchisor is irreparably harmed if non-competition clause is not enforced); *S & R Corp.*, 968 F.2d at 378 (irreparable injury in trademark infringement case includes loss of control of reputation, loss of trade, loss of goodwill, possibility of confusion, and lack of control over trademark; in addition, "trademark infringement amounts to irreparable injury as a matter of law"). The Defendants respond to the Plaintiffs' argument by stating, in essence, that the trademark infringement allegation is fundamentally a contract issue, not a federal issue, and that under ¶10 of the Franchise Agreement the Defendants should be allowed to remain in business for the limited purpose of completing the transfer of their franchise interest to Mr. Gauba.  These two arguments are without merit.  First, the Defendants do not provide any legal support for their proposition that the trademark infringement allegation should not be brought under the Lanham Act.  *See S & R Corp.*, 968 F.2d at 375 ("Once a franchise is terminated, the franchiser has the right to enjoin unauthorized use of its trademark under the Lanham Act.").  Second, as discussed above, the Plaintiffs are not obligated under the Franchise Agreement to consent to the transfer of the Defendants' franchise interest because the Defendants owe Dunkin' Donuts money.  Furthermore, Mr. Gauba is no longer interested in purchasing the

7

franchise interest.  Even if Mr. Gauba were still interested in purchasing the franchise interest, he probably could not do so under a terminated Franchise Agreement.  The Plaintiffs have shown that irreparable injury will occur if the preliminary injunction is not issued.

      3.  Weighing the Harm to Defendants Against the Harm to Plaintiffs

When a franchisee stops paying royalties or otherwise stops performing under a franchise agreement, the franchisee "is certainly harmed by the threat of loss of his franchise, but his self-inflicted harm is far outweighed by the immeasurable damage done [to the franchisor] by the infringement of its trademark."  *Id*. at 379.  *See also ATL International, Inc.*, Business Franchise Guide (CCH), New Developments 30,324 (although the franchisee will suffer harm if an preliminary injunction is issued, that harm is the direct result of the franchisee executing an agreement containing a non-competition clause).  Nonetheless, the Defendants argue that if the preliminary injunction issues the harm to them would be more substantial than any harm to the Plaintiffs because the Defendants would be deprived of the right to sell their franchise interest, which has a value of more than $90,000, to Mr. Gauba.  As discussed already, the Plaintiffs are not obligated to approve a transfer of the franchise interest.  The Plaintiffs have demonstrated that they would be more harmed than the Defendants if a preliminary injunction is not issued.

      4.  Public Interest

"Where a likelihood of confusion arises out of the concurrent use of a trademark, the infringer's use damages the public interest."  *S & R Corp.*, 968 F.2d at 379.  In addition, "[t]he public has an interest in enforcing covenants not to compete contained within valid contracts as long as the covenant is reasonably limited in scope, duration and geographic region."  *Gold v. Holiday Rent-A-Car International, Inc.*, 627 F.Supp. 280, 285 (W.D. Mo. 1985).  The

Defendants do not dispute these statements of law or their applicability to this case.  Instead, as before, the Defendants claim that the Plaintiffs' alleged bad faith with respect to the Defendants' desire to transfer their franchise interest to Mr. Gauba somehow contradicts the benefits the public interest would gain if the Court issues a preliminary injunction.  As discussed above, the Defendants' bad faith argument is without merit.  Plaintiffs have carried their burden of showing that the public interest would not be adversely affected by a preliminary injunction.  In sum, the Court concludes that a preliminary injunction should issue.

    IT IS ORDERED that:

    1.  a hearing on the Plaintiffs' Application for Preliminary Injunction (Doc. No. 2) is unnecessary and will not be set;

    2. Plaintiffs' Application for Preliminary Injunction (Doc. No. 2) is granted;

    3.  a preliminary injunction immediately enjoining the Defendants from further use of Dunkin' Donuts' trademarks, proprietary marks, system, and operating manuals, and from competing in any business which sells products of the type offered by Dunkin' Donuts shops will be issued; and

    4.  Defendants will be ordered to show cause at a hearing on December 4, 2003 at 3:00 p.m. why the preliminary injunction should not be made permanent.

_____
SENIOR UNITED STATES DISTRICT JUDGE