IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DUNKIN' DONUTS INCORPORATED,
a Delaware corporation, and DUNKIN' DONUTS
USA, INC., a Michigan corporation,

      Plaintiffs/Counterdefendants,

vs.                                Civ. No. 03-925 JP/RLP

SHARIF, INC., a New Mexico corporation,
RAHIM SHARIF and ANISA SHARIF,
husband and wife,

      Defendants/Counterclaimants.

MEMORANDUM OPINION AND ORDER

On February 11, 2004, the Plaintiffs/Counterdefendants (Plaintiffs) filed Plaintiffs' Motion

for Partial Summary Judgment (Doc. No. 31).  Having reviewed the briefs and relevant law, the

Court finds that Plaintiffs' Motion for Partial Summary Judgment should be granted.  The Court

further finds that the Plaintiffs are entitled to summary judgment on Counts Four and Five of the

Complaint, and on the Defendants/Counterclaimants' (Defendants) counterclaims.

A.  Background

Unless otherwise noted, the following material facts are not disputed.  On February 1,

1986, Plaintiff Dunkin' Donuts Incorporated and Defendant Sharif, Inc. (Sharif, Inc.) entered into

a written Franchise Agreement granting Sharif, Inc. the right to operate a Dunkin' Donuts shop in

Albuquerque, New Mexico.  Defendants Rahim and Anisa Sharif personally guaranteed all of the

obligations which Sharif, Inc. might incur under the 1986 Franchise Agreement.  On June 1,1990,

Plaintiff Dunkin' Donuts Incorporated and Sharif, Inc. entered into a written Branded Products

Agreement granting Sharif, Inc. the right to supply Dunkin' Donuts branded products to approved

retail locations.

On January 3, 2000, the 1986 Franchise Agreement expired by its own terms.   Thereafter,

Sharif, Inc. continued to operate the Dunkin' Donuts shop under the 1986 Franchise Agreement

on a month to month basis.  Sharif, Inc. subsequently defaulted under the Franchise and Branded

Products Agreements by failing to pay various fees owed to the Plaintiffs.  As a result of Sharif,

Inc.'s failure to make the required payments to Plaintiffs, Sharif, Inc. executed a promissory note

to Dunkin' Donuts on January 30, 2001 for the amount of money due under the Franchise and

Branded Products Agreements.

The Defendants claim that in January or February 2001, Plaintiffs' employees stated that if

the Defendants agreed to renew the 1986 Franchise Agreement and to pay the franchise renewal

fee, Sharif, Inc. would have until March 2004 to comply with the remodeling requirement for

renewing a franchise agreement.[1]  The same employees also allegedly told the Defendants that if

Sharif, Inc. sold its franchise interest prior to March 2004, the buyer would have six months to

undertake the remodeling.

Sharif, Inc., nonetheless, defaulted under the January 30, 2001 promissory note and

continued to default under the Franchise and Branded Products Agreements.  The Plaintiffs and

Sharif, Inc. then entered into a settlement agreement in the fall of 2001 which replaced the

January 30, 2001 promissory note with a promissory note dated October 11, 2001.  The

settlement agreement also stated that the parties would execute a new franchise agreement and

---

[1]In addition to signing the renewed Franchise Agreement, the franchise renewal offer
contained in the 1986 Franchise Agreement requires remodeling of the shop, completing a
refresher course regarding the operation of Dunkin' Donuts shops, and executing a general
release of claims against Dunkin' Donuts.

acknowledged that the Defendants had already paid the franchise renewal fee of $5,000.

Defendants Rahim and Anisa Sharif personally guaranteed the October 11, 2001 promissory note.

The final payment of the October 11, 2001 promissory note was due on May 1, 2003.

The Defendants contend that the 1986 Franchise Agreement was in fact renewed on

March 29, 2002 retroactive to January 3, 2000 for a period ending on January 3, 2010.  Gary

Zullig, a collection case specialist with Dunkin' Donuts, however, stated in an affidavit that there

was no subsequent Franchise Agreement and that the 1986 Franchise Agreement was not extended

or renewed because Sharif, Inc. never completed the prerequisites required for renewing the 1986

Franchise Agreement, or at the very least, the Plaintiffs never received a signed Franchise

Renewal Agreement or general release from the Defendants.  According to Mr. Zullig, the

renewal documents were not delivered to the Defendants until April 2002 and as of July 30, 2002,

the Defendants had not returned the signed renewal documents to the Plaintiffs.  Moreover, on

August 2, 2002, the Plaintiffs informed the Defendants by letter that the Plaintiffs had still not

received the signed renewal documents. Although Defendants' attorney stated in two January

2003 letters to Jack Laudermilk, assistant general counsel for Dunkin' Donuts, that the renewed

franchise agreement was signed in April 2002, the Defendants' copy of the renewed Franchise

Agreement dated March 29, 2002 does not contain a signature page.

Regardless of whether the 1986 Franchise Agreement was renewed or not, Sharif, Inc.

continued to operate the franchise based on the terms of the 1986 Franchise Agreement.

Furthermore, Sharif, Inc. continued to default under the Franchise and Branded Products

Agreements by failing to make the required money payments.  Sharif, Inc. also continued to

3

default under the October 11, 2001 promissory note.[2]

On December 20, 2002, Plaintiffs informed the Defendants that they would terminate the Franchise Agreement on February 1, 2003 for failure to cure defaults. Plaintiffs also informed the Defendants at that time that Sharif, Inc. had to comply with the post-termination obligations of the Franchise Agreement upon its termination. Those post-termination obligations included the cessation of the use of Dunkin' Donut trademarks, proprietary marks, the Dunkin' Donut system, and Dunkin' Donuts operating manuals as well as compliance with the covenant against competition. The Plaintiffs, however, apparently did not terminate the Franchise Agreement on February 1, 2003 but instead allowed Sharif, Inc. to continue operating the shop under the Franchise Agreement.

Even so, Sharif, Inc. failed to make the final payment of $41,967.91 on the October 11, 2001 promissory note due on May 1, 2003. Sharif, Inc. also completely stopped reporting weekly gross sales and paying fees after the week ending March 29, 2003 and Sharif, Inc. failed to report gross sales and pay fees for the week ending April 5, 2003 and all subsequent weeks. On June 10, 2003, the Plaintiffs sent the Defendants their final Notice to Cure which gave Sharif, Inc. 15 days to cure the defaults noted in the Notice to Cure. On July 8, 2003, Plaintiffs notified the Defendants that the Franchise Agreement was terminated because Sharif, Inc. had not cured its defaults as provided in the June 10, 2003 Notice to Cure.

Sharif, Inc., however, continued to operate its shop as a Dunkin' Donuts shop and subsequently failed to abide by the post-termination obligations under the Franchise Agreement.

---

[2]Plaintiffs sent Notices to Cure these defaults to the Defendants on September 25, 2002; November 15, 2002; January 15, 2003; January 24, 2003; and June 10, 2003, respectively.

On August 7, 2003, the Plaintiffs filed this lawsuit alleging trademark infringement and unfair

competition under the Lanham Act (Counts One and Two); breach of the provisions of the

Franchise Agreement concerning the post-termination covenant against competition (Count

Three); breach of the provisions of the Franchise and Branded Products Agreements concerning

the obligation to pay franchise fees, branded products fees, and advertising fees (Count Four); and

breach of the October 11, 2001 promissory note (Count Five).  At this time, the Plaintiffs seek

only monetary relief.[3]

Sharif, Inc. does not deny that it owes the Plaintiffs money under the Franchise and

Branded Products Agreements, and the October 11, 2001 promissory note.  The Defendants also

do not deny that the Franchise Agreement was terminated on July 8, 2003 nor do the Defendants

deny that Sharif, Inc. failed to comply with the post-termination obligations of the Franchise

Agreement.  The Defendants, however, assert that Razzak Gauba informally agreed on June 25,

2003 to purchase Sharif, Inc.'s Dunkin' Donuts franchise interest for $90,000, assume Sharif,

Inc.'s debt under the October 11, 2001 promissory note, and then pay that debt at

---

[3]On November 20, 2003, the Court issued a preliminary injunction immediately enjoining the Defendants from further use of Dunkin' Donuts' trademarks, proprietary marks, system, and operating manuals, and from competing in any business which sells products of the type offered by Dunkin' Donuts shops.  Preliminary Injunction and Order to Show Cause (Doc. No. 21).  As a result of the preliminary injunction, the Defendants closed their Dunkin' Donuts shop on November 24, 2003. The Court made the preliminary injunction permanent on December 10, 2003.  Permanent Injunction (Doc. No. 26).

closing.[4] Mr. Gauba was the franchisee of several Dunkin' Donuts shops in the Albuquerque

area. Although the Defendants indicate that Defendant Rahim Sharif attempted to present Dunkin'

Donuts with a signed franchise purchase agreement and check for deposit sometime after June 19,

2003 but presumably prior to the July 8, 2003 termination of the Franchise Agreement, the Court

notes that the Defendants have not provided any evidence of a formal signed franchise purchase

agreement or a check for deposit.

Defendant Rahim Sharif states that prior to entering into the June 25, 2003 purchase

agreement with Mr. Gauba, Mr. Gauba told him that earlier in June 2003 the Plaintiffs had

indicated that Mr. Gauba was a viable candidate for purchasing a new Dunkin' Donuts store in

Albuquerque. However, as of June 25, 2003, Mr. Gauba had failed to report gross sales or pay

fees under his Dunkin' Donuts franchise agreement for the week ending May 17, 2003 and had

failed to report gross sales or pay fees for the week ending May 24, 2003 and every week

thereafter. When Keith Bakker, a Dunkin' Donuts representative, spoke with Mr. Gauba on

August 13, 2003 about purchasing Sharif, Inc.'s franchise interest, Mr. Gauba's defaults remained

uncured and continued to increase every week through the week ending August 9, 2003.

According to Mr. Bakker, Mr. Gauba stated on August 13, 2003 that he was financially unable to

purchase Sharif, Inc.'s franchise interest and that Mr. Bakker could inform Defendant Rahim

Sharif that he no longer intended to purchase Sharif, Inc.'s franchise interest. Mr. Bakker

---

[4]The 1986 Franchise Agreement requires prior approval of the transfer by Dunkin' Donuts before a franchise interest can be transferred. 1986 Franchise Agreement at ¶10.B. The Franchise Agreement also requires that prior monetary obligations to Dunkin' Donuts be paid before a transfer of a franchise interest can be approved. *Id*. at ¶10.B.4. Finally, as acknowledged by the Defendants in their informal proposal to sell Sharif, Inc.'s franchise interest to Mr. Gauba, a transfer of a franchise interest cannot be approved unless the shop's landlord approves a transfer of the lease to the buyer of the franchise interest.

indicates that later that afternoon, he informed Defendant Rahim Sharif that Mr. Gauba was not interested in purchasing Sharif, Inc.'s franchise interest.

On September 2, 2003, Mr. Bakker wrote a letter to Defendant Rahim Sharif regarding their conversation on August 13, 2003. In his letter, Mr. Bakker proposed a settlement agreement taking into account what he perceived were Defendant Rahim Sharif's goals. The proposed settlement agreement included reinstating the Franchise Agreement for the sole purpose of selling Sharif, Inc.'s franchise interest within six months. On September 8, 2003, the Defendants rejected the proposed settlement agreement because it did not provide for transferring Sharif, Inc.'s franchise interest to Mr. Gauba. Counsel for the Plaintiffs responded to the Defendants' rejection of the proposed settlement agreement by noting that Dunkin' Donuts had no obligation to approve any proposed transfer of Sharif, Inc.'s franchise interest to Mr. Gauba because the franchise interest had been terminated and that Mr. Gauba told Mr. Bakker that he was no longer interested in purchasing Sharif, Inc.'s franchise interest. Plaintiffs, however, remained willing to resolve the matter through a settlement agreement. Interestingly, on September 16, 2003, Mr. Gauba signed a notarized letter indicating his continued interest in buying Sharif, Inc.'s franchise interest.

Allen White, a franchise services manager, later spoke with Mr. Gauba on October 6, 2003 and learned that Mr. Gauba had not further pursued the purchase of Sharif, Inc.'s franchise interest because he could not get the necessary financing to purchase the franchise interest while also trying to finance the remodeling of one of his own Dunkin' Donuts shops and combining one of his shops with a Baskin-Robbins store. Defendant Rahim Sharif indicates that after the October 6, 2003 meeting Mr. Gauba stated that he was still interested in purchasing Sharif, Inc.'s

7

franchise interest although Mr. White noted that Mr. Gauba had too many remodeling obligations to be able to purchase Sharif, Inc.'s franchise interest. According to Mr. White, Plaintiffs never received a formal purchase agreement from the Defendants or Mr. Gauba.

The Defendants contend that the Plaintiffs failed to give the Defendants' request to transfer Sharif, Inc.'s franchise interest to Mr. Gauba good faith consideration as required under the Franchise Agreement.   The Defendants, therefore, filed the following counterclaims in this lawsuit:  breach of duty to mitigate damages, breach of duty of good faith and fair dealing, and bad faith breach of contract.  The Defendants seek injunctive relief and monetary damages.

B. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir.1996) (citation omitted). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings. *Bacchus Indus., Inc.*, 939 F.2d at 891.

C.  Discussion

    1.  Defendants' Failure to Comply with Local Rules

As an initial matter, the Court notes that Defendants have failed to comply with two local rules.  First, the Defendants' response brief exceeds the 24 page limitation by two pages.[5]  *See* D.N.M. LR-Cv 7.7.  Second, the Defendants failed to number each fact in dispute, did not "refer with particularity to those portions of the record upon which the opposing party relies," and failed to "state the number of the movant's fact that is disputed."  D.N.M. LR-Cv 56.1(b).  Under the local rules, "[a]ll material facts set forth in the statement of the movant will be deemed admitted unless specifically controverted."  *Id*.  Because the Court prefers to decide a motion for summary judgment on the merits, the Court will not penalize the Defendants for their defective response brief.  However, the Court may in the future sanction the Defendants for failure to comply with the local rules.

    2.  The Merits of the Plaintiffs' Motion for Partial Summary Judgment

It is undisputed that Sharif, Inc. defaulted under the Franchise Agreement, whether it was a renewed Franchise Agreement or a month-to-month continuation of the 1986 Franchise Agreement.  It is also undisputed that Sharif, Inc. defaulted under the Branded Products Agreement as well as the October 11, 2001 promissory note.  The Defendants, nonetheless, argue against summary judgment on Counts Four and Five of the Complaint by asserting that the Plaintiffs in bad faith failed to mitigate their damages by unreasonably refusing to consent to Sharif, Inc.'s sale of its franchise interest to Mr. Gauba.  This argument mirrors the Defendants'

---

[5]In addition to exceeding the page limitation, Defendants' counsel failed to number the pages of the response brief.

counterclaims which are based on the allegation that the Plaintiffs breached the Franchise

Agreement by unreasonably withholding consent to the proposed transfer of Sharif, Inc.'s

franchise interest to Mr. Gauba.  The Court will address the basis for the Defendants'

counterclaims first, then address the Defendants' mitigation of damages argument with respect to

Counts Four and Five.

> a.  Whether the Plaintiffs Unreasonably Withheld Consent to the Proposed
> Transfer of Sharif, Inc.'s Franchise Interest to Mr. Gauba

The Plaintiffs argue that they were not obligated under the Franchise Agreement to either

consider or approve a proposed transfer of Sharif, Inc.'s franchise interest to Mr. Gauba because

1) the Franchise Agreement was terminated either on February 1, 2003 or July 8, 2003; 2) the

proposed transfer of Sharif, Inc.'s franchise interest to Mr. Gauba did not comply with the

Franchise Agreement's requirement that Sharif, Inc.'s money obligations to Plaintiffs be satisfied

prior to a transfer of a franchise interest; 3) Sharif, Inc. was in material breach of the Franchise

Agreement by being in default; 4) the lease contingency mentioned in the informal agreement to

transfer Sharif, Inc.'s franchise interest to Mr. Gauba had not been met; 5) Mr. Gauba was himself

in default of his own Dunkin' Donuts franchise agreement; and 6) Mr. Gauba was no longer

interested in purchasing Sharif, Inc.'s franchise interest.

> (1)  Termination of the Franchise Agreement

The Plaintiffs contend that the Franchise Agreement was terminated on either February 1,

2003 or July 8, 2003, before Sharif, Inc. could transfer its franchise interest to Mr. Gauba.

Viewing the evidence in the light most favorable to the Defendants, the evidence shows that

Sharif, Inc.'s franchise interest was formally terminated on July 8, 2003, not on February 1, 2003.

Obviously, Sharif, Inc. cannot transfer a franchise interest that no longer exists. The Plaintiffs'

obligation under the Franchise Agreement to not unreasonably withhold consent to the proposed

transfer of Sharif, Inc.'s franchise interest to Mr. Gauba, therefore, must have occurred prior to

July 8, 2003.  The question then becomes whether Plaintiffs unreasonably withheld consent to the

proposed transfer of Sharif, Inc.'s franchise interest to Mr. Gauba prior to July 8, 2003.

(2)  Compliance with the Franchise Agreement

The Franchise Agreement states that the franchisee cannot assign a franchise interest

without Dunkin' Donuts' prior written consent and that the franchisee must satisfy all accrued

money obligations owed to Plaintiffs before the Plaintiffs can approve the transfer of a franchise

interest.  ¶10(B) and ¶10(C)(2)(g) of the 1986 Franchise Agreement.  The Defendants admit that

Sharif, Inc. owed money to Plaintiffs months prior to the informal June 25, 2003 proposal to sell

Sharif, Inc.'s franchise interest to Mr. Gauba.  The Defendants argue that they planned to satisfy

Sharif, Inc.'s money obligations to the Plaintiffs prior to transferring Sharif, Inc.'s franchise

interest to Mr. Gauba by having Mr. Gauba assume those obligations and then pay those

obligations prior to the transfer of Sharif, Inc.'s franchise interest to him.  The only document the

Defendants present in support of this argument is the June 25, 2003 informal proposal between

Defendant Rahim Shairf and Mr. Gauba to sell Sharif, Inc.'s franchise interest to Mr. Gauba.  The

informal proposal requires that the "loan," presumably the October 11, 2001 promissory note, be

transferred to Mr. Gauba and that the selling price be $90,000 "after the loan transfer from Sharif

Inc. to the Buyer (what ever the loan amount is.)"  Even assuming that Mr. Gauba agreed to

assume Sharif, Inc.'s obligations under the October 11, 2001 promissory note and agreed to pay

those obligations prior to the transfer of Sharif, Inc.'s franchise interest to him, the informal

proposal does not mention whether the Defendants or Mr. Gauba agreed to pay the Plaintiffs the various fees which Sharif, Inc. owed the Plaintiffs.  Since those fees were still outstanding at the time the Defendants and Mr. Gauba formulated the June 25, 2003 informal proposal, a reasonable juror could not find that Sharif, Inc. had met the Franchise Agreement's requirement that all money obligations to the Plaintiffs be satisfied prior to transferring a franchise agreement.

(3) Sharif, Inc.'s Breach of the Franchise Agreement

The Plaintiffs also argue that they did not have to comply with the Franchise Agreement once Sharif, Inc. materially breached the Franchise Agreement by defaulting.  The Defendants, in fact, agree "that as a general proposition a non-breaching party *may* (rather than shall) be relieved of its obligation to perform as a result of a material breach by the other party."  Response at unnumbered pg. 13.  The Defendants, however, unconvincingly contend that this proposition applies only to future contractual obligations, not to prior existing contractual obligations which in this case include separate sets of promises by the parties.

It is well established that a material breach of a bilateral contract excuses the non-breaching party from performing its duties under the contract.  *See, e.g.,* 13 *Corbin on Contracts* §68.2 at 157-58 (2003).  In this case, it is undisputed that the Franchise Agreement was a bilateral contract in which Sharif, Inc. promised to pay various fees under the Franchise Agreement in exchange for a franchise interest and Plaintiffs' promise to reasonably consider any transfer of the franchise interest to another person or entity.  Sharif, Inc. materially breached the Franchise Agreement when it defaulted in March 2003 and April 2003 and continued to default until the shop closed in November 2003.  Consequently, beginning in March 2003 and April 2003, the Plaintiffs were not required to perform further under the Franchise Agreement.  The Plaintiffs

12

were, therefore, not obligated under the Franchise Agreement to consider any proposed transfer

of Sharif, Inc.'s franchise interest to Mr. Gauba in June 2003 or anytime thereafter.

(4)  The Lease Contingency

The Plaintiffs also argue that even if the Plaintiffs were obligated to consider the June 25,

2003 informal proposal to transfer Sharif, Inc.'s franchise interest to Mr. Gauba, the Plaintiffs

would not have approved the informal proposal because its condition requiring the landlord's

transfer of the shop lease to Mr. Gauba was never met.  In the alternative, the Plaintiffs argue that

if they unreasonably withheld their consent to transfer Sharif, Inc.'s franchise interest to Mr.

Gauba, the Plaintiffs would not be liable for damages because there is no evidence that the

landlord would have assigned the lease of the shop to Mr. Gauba.  The Plaintiffs are correct in

observing that other than the unsubstantiated allegations made by Defendants' counsel there is no

evidence that the landlord was willing to transfer the shop lease to Mr. Gauba at any time.

Accordingly, the Plaintiffs were not required under the terms of the informal June 25, 2003

proposal to approve the proposal.

(5)  Mr. Gauba's Default Under His Franchise Agreement

Next, the Plaintiffs argue that considering Mr. Gauba defaulted under his franchise

agreement beginning in May 2003, well before the June 25, 2003 informal proposal to sell Sharif,

Inc.'s franchise interest to Mr. Gauba, and continuing until at least August 2003, the Plaintiffs

could not reasonably be expected to approve Mr. Gauba as a purchaser of Sharif, Inc.'s franchise

interest.  The Defendants contend that Mr. Gauba's defaults could not have been too egregious if

the Plaintiffs have not terminated his franchise agreement based on the defaults.  Nonetheless, a

reasonable juror could not find that the Plaintiffs acted unreasonably in withholding consent to

transfer Sharif, Inc.'s franchise interest to a person with a then current history of defaulting under

a presumably similar franchise agreement.[6]

        (6)  Mr. Gauba's Desire to Purchase Sharif, Inc.'s Franchise Interest

  Finally, the Plaintiffs argue that subsequent to the June 25, 2003 informal purchase

agreement Mr. Gauba indicated to them that he no longer wanted to purchase Sharif, Inc.'s

franchise interest.  The Defendants contest this argument by providing evidence that Mr. Gauba

was always interested in purchasing Sharif, Inc.'s franchise interest.  Even assuming that Mr.

Gauba continued to express a desire to purchase Sharif, Inc.'s franchise interest, for the reasons

describe above, a reasonable juror could not find that the Plaintiffs unreasonably withheld consent

to transfer Sharif, Inc.'s franchise interest to Mr. Gauba.  The Plaintiffs are, therefore, entitled to

summary judgment on the Defendants' counterclaims.

    b.  Mitigation of Damages

  Having found that a reasonable juror could not find that the Plaintiffs unreasonably

withheld consent for Sharif, Inc.'s transfer of its franchise interest to Mr. Gauba, the Defendants'

failure to mitigate damages argument fails as well.  In addition, the Court notes that the

undisputed facts show that the Plaintiffs tried to mitigate their damages on several different

occasions.  First, the Plaintiffs agreed to two different promissory notes so that Sharif, Inc. could

pay the fees it owed under the Franchise and Branded Products Agreements.  Second, the

---

  [6]Although the Defendants contend that Mr. Gauba indicated to Defendant Rahim Sharif that in June 2003 the Plaintiffs believed Mr. Gauba was a viable candidate for acquiring a new Dunkin' Donuts shop, the Court notes that Mr. Gauba's alleged statement to Defendant Rahim Sharif is hearsay and therefore inadmissible.  *See* Fed. R. Civ. P. 56(e)("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.").

Plaintiffs did not terminate the Franchise Agreement on February 1, 2003 as they had stated they would and allowed Sharif, Inc. to continue operating its shop so it could presumably pay its debt to Plaintiffs.  Third, in August and September 2003, prior to the filing of this lawsuit, the Plaintiffs through Mr. Bakker attempted to reach a settlement with the Defendants whereby Sharif, Inc. could satisfy its debt to the Plaintiffs by selling its franchise interest.  A reasonable juror, therefore, could not find that the Plaintiffs engaged in bad faith by failing to mitigate damages.  Accordingly, the Plaintiffs are entitled to summary judgment on Counts Four and Five of the Complaint.

   3.  Damages

The Plaintiffs allege that for the weeks ending April 5, 2003 through November 22, 2003 Sharif, Inc. owes them $21,848.03 in franchise and advertising fees, and $2,467.35 in branded products fees.  Including an interest rate of 18% per annum to those fee amounts, the grand total of fees owed to the Plaintiffs is apparently $36,484.26. Sharif, Inc. also owes the Plaintiffs $41,967.91 on the October 11, 2001 promissory note.  That amount, however, does not take into account the 12% rate of interest per annum.  The Defendants assert that they "are without sufficient knowledge to determine whether damages claimed are correct as of this particular moment in time...."  Response at unnumbered pg. 4.  The Court will, therefore, defer ruling on the issue of Plaintiffs' damages until the November 8, 2003 bench trial on the remaining counts of the Complaint

   IT IS ORDERED that:

   1.  Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 31) is granted;

   2.  the Defendants are liable to the Plaintiffs for the claims stated in Counts Four and Five

of the Complaint;

      3.  the Defendants' counterclaims will be dismissed with prejudice; and

      4.  the Court will defer ruling on the issue of Plaintiffs' damages under Counts Four and

Five of the Complaint until the November 8, 2004 bench trial.


_____
SENIOR UNITED STATES DISTRICT JUDGE